| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF BERTUCCI CONTRACTING CO., LLC, AS OWNER OF THE M/V SHARON GAIL, FOR EXONERATION FROM OR LIMITATION OF LIABILITY<br><br>This Document Applies to: ALL CASES | | CIVIL ACTION<br><br>NO: 12-664 c/w 12-697<br><br>SECTION: J-3<br><br>JUDGE BARBIER<br><br>MAG. JUDGE KNOWLES |

## ORDER AND REASONS

NASDI, LLC ("NASDI") and Bertucci Contracting Company, LLC ("Bertucci") (collectively, "Limitation Plaintiffs") have each filed Limitation Complaints under the Shipowner's Limitation of Liability Act ("Limitation Act" or "Act"), 46 U.S.C. §§ 30501, et. seq., which have been consolidated before this Section (collectively, "Limitation Actions"). Claimants-in-Limitation Daniel and Shirley Wagner, et al., (sometimes referred to as "Claimants/Movers" or simply "Claimants") presently move the Court for an order directing the Limitation Plaintiffs to amend their Complaints to specify which claims are subject to the Limitation Actions. Rec. Docs. 70, 73, 87. Additionally, and in the alternative, Claimants move to dismiss the Limitation Actions for lack of subject matter jurisdiction and/or because the Limitation Plaintiffs had privity and knowledge of the conditions giving rise to the complained-of harms. Id. Additionally, and in the alternative, Claimants request that the Court's previous orders

enjoining the prosecution of claims against the Limitation
Plaintiffs be lifted or narrowed in scope.  Id.  Opposition and
reply briefs were filed, Rec. Docs. 90, 91, 105, 107, and the
matter was submitted without oral argument on May 23, 2012.  For
the reasons explained below, Claimants' motions are **GRANTED IN PART**
and **DENIED IN PART**.

## I.  FACTUAL AND PROCEDURAL HISTORY

This controversy arises from an ongoing project in St. Tammany
Parish, Louisiana, to recycle concrete recovered from the original
Interstate 10 Twin Span Bridge ("Twin Spans").  The Twin Spans are
a pair of parallel bridges that traverse the eastern portion of
Lake Pontchartrain and connect the lake's southern (Orleans Parish)
and northern (St. Tammany Parish) shores.  In 2005, the Twin Spans
were severely damaged by Hurricane Katrina.  Although repairs were
made, the State of Louisiana ("State")[1] ultimately determined that
new, more robust bridges should be built and the old Twin Spans
demolished.  The State further decided to use the concrete from the
old Twin Spans in a variety of other projects, including shoreline
protection in nearby Lake Borgne, creating an artificial reef in
Lake Pontchartrain, and building a fishing pier in St. Tammany
Parish.

---

[1]  The State of Louisiana acted through various agencies, such as the
Department of Transportation and Development, the Department of Wildlife and
Fisheries, and the Coastal Protection and Relief Authority.  For ease of reading,
however, this Order will simply refer to these agencies as "the State."

Demolition and removal of the old Twin Spans commenced in May of 2011. As demolition progressed, tugboats and barges transported the removed concrete and other bridge materials from the lake to a "staging area." The staging area is a piece of undeveloped property just north of Lake Pontchartrain. A canal connects the staging area to the lake. On the opposite bank of the canal lie Lakeshore Estates Subdivision and other residential areas ("residential areas" or "residential properties"). At the staging area concrete is mechanically broken or crushed into smaller pieces, then sorted by size. Some of the broken concrete is then placed into metal, basket-like structures ("marine baskets"), which are transported by barge to Lake Borgne for use in shoreline protection.

The State contracted with several parties to complete this work, only two of which are relevant here. NASDI was contracted to demolish the old Twin Spans, transport concrete from the lake to the staging area, and conduct some of the concrete-breaking operations. Bertucci was similarly involved with transporting concrete to the staging area and conducting some of the breaking operations. Bertucci also assembled and transported the marine baskets for the shoreline protection project.

On January 17, 2012, four of the residents from the residential areas, who are also the Claimants/Movers here, brought an action in state court against NASDI, Bertucci, and other parties

("State Action").[2]  The State Action asserts that the concrete crushing operation generates noise, dust, and vibrations sufficient to cause physical discomfort, annoyance, and/or damage to the residential areas nearby.  <u>See</u> State Petition ¶¶ 30-32, 38, 52-53, 57-58, 65 (attached as Ex. A to Bertucci's Cmpl., Rec. Doc. 1-3). These claims generally sound in nuisance, although negligence and—in the case of dust landing on the residential properties—trespass are also asserted.  The State Action also pleads trespass claims against the owners/operators of the vessels. <u>Id.</u> ¶¶ 45, 49, 53, 58.  Claimants assert that some of the residential properties extend to the canal's midpoint.  When the vessels navigate on the Claimants' side of the canal, they allegedly trespass on these properties.[3]  The State Action seeks preliminary and permanent injunctions, a declaratory judgment, class certification, and monetary damages.  Most claims are brought under Louisiana law; however, it is also alleged that certain defendants (none of whom are the Limitation Plaintiffs) are liable for punitive damages under general maritime law.  <u>Id.</u> ¶ 64.

On March 9 and March 14, respectively, Bertucci and NASDI

---

[2] <u>Wagner, et al. v. Tammany Holding Co., et al.</u>, No. 2012-453 (Civ. Dist. Ct., Parish of Orleans, La.). Other defendants are Tammany Holding Company, LLC, Traffic Solutions, Inc., Disposal Services, Inc., Cabildo Staffing, LLC, E-1 Electric, LLC, Triple C Towing, LLC, Coastal Logistics, LLC, Anselmi Marine, LLC, McDonough Project Services, LP, and Lakeshore Estates Homeowner's Association, Inc.  No claims are asserted against the State or its agencies.

[3] The State Action also asserts that the use of commercial vessels in the canal violates the neighborhood covenant.  State Petition ¶¶ 49, 52, 53.

filed the instant Limitation Actions, seeking exoneration from or limitation of liability relative to the claims asserted in the State Action. See Rec. Doc. 1 ¶¶ 4-7; Rec. Doc. 32 ¶ XLVII. NASDI claims it is the owner *pro hac vice* and operator of one tugboat, two pushboats, and multiple barges, which it used to transport concrete to the staging area. See Rec. Doc. 32. Bertucci claims it is the owner and operator of the M/V SHARON GAIL, a tugboat used to move barges to and from the staging area. After the Limitation Actions were filed, the Court enjoined the prosecution of claims against the Limitation Plaintiffs, including the claims in the State Action. See 46 U.S.C. § 30511(c); Fed. R. Civ. P. Supp. Rule F(3). However, the State Action was not restrained as to the other defendants.

On March 18, 2012, Claimants filed an "Emergency Motion to Limit Stay, Lift Stay, and/or Set Preliminary Injunction Hearing." See Rec. Doc. 17. The Court denied this motion during a telephone conference with counsel held the next day. See Tr. of 3/19/12 Status Conf. p.24, Rec. Doc. 80; Minute Entry, Rec. Doc. 22. However, Claimants were not precluded from re-raising their arguments at a later time. Tr. of Status Conf. 3/19/12 p.24, Rec. Doc. 80. On April 23, 2012, Claimants formally answered and asserted claims in the Limitation Actions (other parties, who are not relevant here, also have filed claims in the Limitation Actions). Rec. Docs. 52, 53. On April 26 and May 14, 2012,

Claimants filed the instant motions.  Rec. Docs. 70, 73, 87.

## II.  PARTIES' ARGUMENTS

Claimants' motions present several arguments.  First, they move for a more definite statement under Rule 12(e), arguing that it is not possible to determine from the Complaints whether the Limitation Plaintiffs seek to limit liability—and by extension, enjoin proceedings outside the Limitation Action—as to all claims in the State Action or only those relating to vessel activity. Claimants urge that the Limitation Act applies only to vessels; therefore, the stay of proceedings should only relate to the claims focusing on vessel activity (i.e., the vessel trespass claims). Second, Claimants urge that admiralty jurisdiction is not present, and consequently, the Limitation Actions must be dismissed. Specifically, Claimants argue that the situs element of admiralty jurisdiction is not met because the canal is a private, as opposed to a public, waterway.  Situs is also not met, Claimants contend, because damage took effect on land, as opposed to water.  Claimants further argue that the requisite maritime nexus is lacking because the activity at issue is primarily land-based construction work, which is not a traditional maritime activity.  Third, Claimants urge that the Limitation Plaintiffs should be deemed to have privity and knowledge that their operations were causing the complained-of harms, because any inspection would have revealed the alleged nuisances and violations of the applicable environmental

6

laws and local ordinances.  Finally, Claimants assert that the
Court's injunction restraining the State Action is overly broad and
violates the Anti-Injunction Act, 28 U.S.C. § 2283.

Limitation Plaintiffs counter that the Court previously and
correctly ruled on many of the issues raised in the instant
motions, and therefore the motions should be denied under the law
of the case doctrine.  As to the request for a more definite
statement, Limitation Plaintiffs argue that their complaints meet
the pleading standards of Rule 8, as evidenced by the 100+
claimants that answered and asserted claims in the Limitation
Actions.  Limitation Plaintiffs also state that it is clear that
they seek to restrain prosecution of all claims against them
arising out of the Twin Spans project, particularly those brought
in the State Action.  As to the jurisdictional argument, Limitation
Plaintiffs assert that whether a waterway is private or public has
no bearing on admiralty jurisdiction.  Furthermore, the Admiralty
Extension Act, 46 U.S.C. § 30101, extends admiralty jurisdiction to
injuries incurred on land that were caused by a vessel on navigable
water.  As to maritime nexus, they contend that the claims relating
to vessel activity center around the daily transport and discharge
of cargo, which are traditional maritime activities.[4]  As to
privity and knowledge, Limitation Plaintiffs assert there are

---

[4] Limitation Plaintiffs note that Claimants do not contest the first part
of the maritime nexus prong—that the type of incident involved had a potentially
disruptive impact on maritime commerce—but Plaintiffs assert this prong is met
as well.  See NASDI's Opp'n Br. p.15 n.4, Rec. Doc. 90.

factual issues that preclude resolution of this issue at this stage. Finally, as to Claimants' position that the stay should be lifted or modified, Limitation Plaintiffs counter that the Limitation Act requires the Court to stay all claims against the Plaintiffs.

## III. DISCUSSION

### A. Law of the Case

As mentioned above, on March 19, 2012, the Court held a telephone conference with counsel and ruled on a motion filed the previous day by the Claimants. Specifically, the Court held that admiralty jurisdiction is present in this case, modifying or lifting the stay was not warranted, and privity and knowledge are merit issues not appropriate for consideration at that time. Tr. of Status Conf. 3/19/12, Rec. Doc. 80. At issue is whether the Court should revisit these rulings.

The "law of the case" doctrine typically prevents collateral attacks against a court's rulings during the pendency of a lawsuit. See Loumar, Inc. v. Smith, 698 F.2d 759, 762 (5th Cir. 1983). It has been described as "merely a **rule of practice**, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." Id. (emphasis in original; quotations and citations omitted). However, law of the case is not a barrier to correction of judicial error, and a judge may reconsider a prior decision in a case so long as the case is still

before him or her.  <u>Id.</u>

Because the State Action concerns a request for preliminary injunction, which is affected by this Court's injunction, the Court has endeavored to decide the matters presented to it on an expedited basis.  For this reason, and also because the Court specifically stated during the March 19th conference that Claimants would be permitted to re-urge their arguments, the Court finds it is appropriate to reconsider its earlier rulings.

**B.   Admiralty Jurisdiction**

At issue is whether admiralty jurisdiction is present.  In ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may rely on: (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  <u>Barrera-Montenegro v. United States</u>, 74 F.3d 657, 659 (5th Cir. 1996).  The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction.  <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).

The Fifth Circuit has explained that the Limitation Act does not confer jurisdiction upon federal courts.  <u>Guillory v. Outboard Motor Corp.</u>, 956 F.2d 114, 115 (5th Cir. 1992) (per curiam); <u>In re Silver Slipper Casino Venture LLC</u>, 264 F. App'x 363, 366 (5th Cir.

2008).[5]  Instead, admiralty jurisdiction must be present under
Article III, Section 2 of the Constitution and Section 1333 of
Title 28 of the United States Code.[6]

Traditionally, the test for admiralty tort jurisdiction was
limited to a "situs" inquiry:  The injury had to be wholly
sustained on navigable waters.  See Grubart, Inc. v. Great Lakes
Dredge & Dock Co., 513 U.S. 527, 531-32 (1995) (discussing case
law).  In 1948, the Admiralty Extension Act expanded admiralty's
situs to include "cases of injury or damage, to person or property,
caused by a vessel on navigable waters, even though the injury or
damage is done or consummated on land."  46 U.S.C. § 30101(a).  In
1972, the Supreme Court added a maritime "nexus" element to the
analysis, which it refined in subsequent opinions.  See Grubart,
513 U.S. at 532-34 (discussing  Exec. Jet Aviation, Inc. v.
Cleveland, 409 U.S. 249 (1972); Foremost Ins. Co. v. Richardson,

_____

    [5]  But see In re Bernstein, 81 F. Supp. 2d 176, 181-82 (D. Mass. 1999)
(concluding that, because the Supreme Court never overturned its decision in
Richardson v. Harmon, 222 U.S. 96 (1911), the Limitation Act provides an
independent basis of federal jurisdiction); Amie L. Medley, Note, A Sea of
Confusion: The Shipowner's Limitation of Liability Act as an Independent Basis
for Admiralty Jurisdiction, 108 Mich. L. Rev. 229 (2009) (same).  The idea that
the Limitation Act does not confer jurisdiction also appears at odds with cases
noting that the Limitation Act "has long been construed to embrace maritime as
well as **non**-maritime claims."  Guillot v. Cenac Towing Co., 366 F.2d 898, 904
(5th Cir. 1966) (citing Just v. Chambers, 312 U.S. 383 (1941), and other cases)
(emphasis added).  It does not appear the Fifth Circuit explicitly overturned
this aspect of Guillot, though it is arguably abrogated by  Guillory.

    [6]  Article III extends the judicial power to "all Cases of admiralty and
maritime Jurisdiction."  U.S. Const. Art. III, § 2.  This power is conferred to
the federal district courts in Section 1333, which states, "The district courts
shall have original jurisdiction, exclusive of the States, of . . . [a]ny civil
case of admiralty or maritime jurisdiction, saving to suitors in all cases all
other remedies to which they are otherwise entitled."  28 U.S.C. § 1333(1).

457 U.S. 668 (1982); <u>Sisson v. Ruby</u>, 497 U.S. 358 (1990)). Thus,

> a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

<u>Id.</u> at 534 (citations and quotations omitted).

At the heart of this matter are two related, but distinct, sets of claims. One set of claims concerns activity occurring on land; i.e., the noise, dust, and vibrations allegedly emanating from the concrete crushing operation at the staging area (sometimes referred to as "land-based claims"). The other set of claims concerns activity occurring on water; i.e., the allegation that the barges and tugboats are trespassing on some of the residential properties when they travel on the "Claimants' side" of the canal (sometimes referred to as "vessel-based claims").[7] Admiralty jurisdiction exists only with respect to the latter, vessel-based, claims.

---

[7] The deposition transcript of one of the Claimants reflects that there may be property damage associated with the vessel activity in the canal. <u>See</u> Dep. Tr. of Michael Appleton pp.135-36, Rec. Doc. 90-2 at 8-9 ("I believe there could be some erosion and washout and potential damage to the bulkhead and/or pilings of the boat structure because of the currents created by the tugs when they . . . push a barge against the - - side of the canal directly across with the exhaust pointed directly toward the boathouse . . . .").

*1. Maritime Situs*

The situs prong requires that the waters at issue be "navigable." The test for navigability for purposes of admiralty jurisdiction springs from The Daniel Ball:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

77 U.S. (10 Wall.) 557, 563 (1870). Although The Daniel Ball refers only to "rivers," subsequent cases applied its test to all bodies of water, including man-made waters. See In re Boyer, 109 U.S. 629, 631-32 (1884); Sanders v. Placid Oil Co., 861 F.2d 1374, 1377 (5th Cir. 1988). Moreover, the fact that a body of water is privately owned is not relevant to the jurisdictional inquiry. See McKie v. Diamond Marine Co., 204 F.2d 132, 135 (5th Cir. 1953) ("[Admiralty jurisdiction] includes canals and other waters **even if they be privately owned or claimed**." (emphasis added; citations omitted)); cf. Dow Chem. Co. v. Dixie Carriers, Inc., 463 F.2d 120, 123 (5th Cir. 1972) (holding that whether a canal is private or public is irrelevant for purposes of the Rivers and Harbors Act). Thus, Claimants' argument that private ownership of the canal

precludes admiralty jurisdiction is incorrect.

It is undisputed that barges entered the canal from Lake Pontchartrain in order to reach the staging area where they would unload the concrete. This establishes that the canal is "used, or [is] susceptible of being used, in [its] ordinary condition, as [a] highway[] for commerce, over which trade and travel are or may be conducted in the customary modes." The Daniel Ball, 77 U.S. (10 Wall) at 563. Furthermore, the canal is connected to Lake Pontchartrain, which, in turn, is connected to the Gulf of Mexico and the Mississippi River via other waterways. Thus, by connecting with other waters, the canal forms a "continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes." Id.; Cf. United States v. Lamastus & Assocs., Inc., 785 F.2d 1349, 1353 (5th Cir. 1986) (holding that a private canal was "navigable" under the Commerce Clause and therefore subject to the Coast Guard's regulatory authority, because, inter alia, it "forms part of a continuous interstate waterway system by its connection to Lake Pontchartrain, which is, in turn connected by other waterways to the Gulf of Mexico"). Consequently, this canal is navigable for purposes of admiralty jurisdiction.

As to the vessel-based claims, situs is met because the alleged tort—vessels trespassing over submerged portions of Claimants' property—occurred on navigable water. Any claims that

this vessel activity caused property damage, such as erosion, <u>see</u> note 7, <u>supra</u>, are also within admiralty jurisdiction by virtue of the Admiralty Extension Act.   <u>See Grubart</u>, 513 U.S. at 534-35 (holding that situs was met where a vessel drove pilings into the Chicago River, causing water to flood a tunnel below the river and eventually flooding properties onshore).

Contrariwise, situs is not met for the land-based claims.  The state-court petition alleges that noise, dust, and vibrations emanating from the crushing operation at the staging area create a nuisance to those living in the nearby residential areas.  It also alleges that vibrations from this activity cause damage to the foundation of homes, and a trespass occurs when dust from the crushed concrete settles on Claimants' properties.  These claims fail to meet admiralty situs, because the injurious **activity** occurred on land, at the staging area, rather than on a vessel on navigable water.  Thus, the land-based claims are unlike the claim in <u>Grubart</u>, where the injurious activity occurred on navigable water.

The land-based claims are also unlike those in <u>Gutierrez v. Waterman S.S. Corp.</u>, 373 U.S. 206 (1963), and <u>In re Cook Transportation System, Inc.</u>, 431 F. Supp. 437 (W.D. Tenn. 1976), which fell within admiralty jurisdiction.  In <u>Gutierrez</u>, beans were stowed on a vessel in defective or broken bags.  373 U.S. at 207.  Some beans spilt from these bags onto the dock where the vessel was

being unloaded. _Id._ A longshoreman slipped on beans that had fallen on the dock. _Id._ The Supreme Court held admiralty jurisdiction was present under the Admiralty Extension Act, because the negligent act—improper stowage of cargo—occurred on navigable waters, even though the impact of that negligence occurred on land (the dock). _Id._ at 207, 210. Similarly, in <u>Cook Transportation</u> there was admiralty jurisdiction when, after being offloaded from a barge at an onshore facility, soybean grain exploded. 431 F. Supp. at 440, 442. It was claimed the grain was negligently stored with foreign objects and/or the barge was unclean and/or the cargo owner failed to inform the designee of the shipment as to the defective or dangerous nature of the cargo. _Id._ Unlike these cases, here, the noise, dust, and vibrations have nothing to with acts occurring on vessels on navigable waters. Although the vessels delivered the concrete to the staging area, the land-based claims did not arise until the separate act of crushing commenced on land.

   _2.  Maritime Nexus_

   Given the Court's conclusion that the land-based claims do not satisfy the situs prong for admiralty tort jurisdiction, it is unnecessary to analyze these claims under the maritime nexus prong. The Court will focus solely on the vessel-based claims.


   As mentioned above, there are two parts to the maritime nexus

inquiry.  First, a court must examine the general features of the type of incident involved—that is, the incident is described at an "intermediate level of possible generality"—and determine whether there exists the potential to disrupt maritime activity.  <u>See</u> <u>Grubart</u>, 513 U.S. at 538.  This part of the nexus test considers "potential effects, not . . . the 'particular facts of the incident,'" by asking "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping."  <u>Id.</u> at 538-39 (quoting <u>Sisson</u>, 497 U.S. at 363).

This incident, when described at an intermediate level of generality, involves alleged acts of trespass by vessels transiting navigable waters.  A "claim of trespass can have a potentially disruptive effect on maritime commerce if vessels are not allowed to navigate the waterways freely."  <u>W. Geophysical Co. v. Adriatic,</u> <u>Inc.</u>, No. 96-513, 1996 WL 453125 at *3 (W.D. La. Aug. 9, 1996). Consequently, the first part of the maritime nexus test is met.

The second part of the nexus test looks to whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. <u>Grubart</u>, 513 U.S. at 539.  The Supreme Court explained, "We ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special

admiralty rules would apply in the suit at hand." Id. at 539-40.
As the Grubart Court pointed out, "Navigation of boats in navigable
waters clearly falls within the substantial relationship." Id. at
540 (citing Foremost Ins., 457 U.S. at 675). Likewise, here the
general character of activity giving rise to the incident also
concerns navigation of vessels in navigable waters. Consequently,
the second part of the nexus test is met.

   3. *Supplemental Jurisdiction*

   For the reasons discussed above, there is admiralty
jurisdiction over the vessel-based claims. However, the land-based
claims do not satisfy the test for admiralty jurisdiction.
Nevertheless, Limitation Plaintiffs invite the Court to find there
is admiralty jurisdiction over these claims as well. Quoting
Grubart, Limitation Plaintiffs urge that "the substantial
relationship to maritime activity factor 'is satisfied when at
least one alleged tortfeasor was engaging in activity substantially
related to traditional maritime activity and such activity is
claimed to have been a proximate cause of the incident.'" Rec.
Doc. 90 at 17 (quoting Grubart, 513 U.S. at 541). Limitation
Plaintiffs conclude, "The vessel-related activities of [Limitation
Plaintiffs] satisfy the test set forth by Grubart, and the land-
based concrete operations do not need to have the same nexus for
admiralty jurisdiction to be present." Id.

The Court declines this invitation. <u>Grubart</u> concerned multiple tortfeasors, each of which was alleged to be the **proximate cause** of the complained-of incident: flooding of inland properties. Here, however, the acts of vessel trespass are not alleged to be the proximate cause of the noise, dust, and vibrations. The vessel-based and land-based claims, though certainly related, are separate and distinct claims. It is conceivable that, had the concrete crushing operation never occurred at the staging area, but the vessels still used the canal to deliver concrete to the staging area, Claimants' land-based claims might not exist, yet they would still have a claim for vessel trespass. Conversely, if the concrete crushing operation did occur at the staging area, but trucks, as opposed to barges, delivered the concrete to the staging area, there would be no claim for vessel trespass, but the land-based claims arising from the concrete crushing operation would persist. Under another hypothetical, suppose Party A was responsible **solely** for the vessels delivering concrete to the staging area, and Party B was responsible **solely** for the land-based crushing activity. <u>Grubart</u> would not lead to the conclusion that the presence of admiralty jurisdiction over Party A means that there will be admiralty jurisdiction over Party B, because only Party A is the proximate cause of the claims arising in admiralty. The result is no different where the same parties conducted both the vessel activity and the land activity, as is the case here.

Thus, this portion of the <u>Grubart</u> opinion simply does not control.

This leaves open the question, which the parties do not explicitly address, of whether the Court should exercise supplemental jurisdiction over the land-based claims. <u>See, e.g.</u>, <u>In re Aramark Leisure Servs.</u>, 523 F.3d 1169, 1175 (10th Cir. 2008) ("Under this provision [28 U.S.C. § 1367], a federal court may exercise supplemental jurisdiction over related third-party claims when the court has admiralty jurisdiction over the original claim."); <u>see also Grubart</u>, 513 U.S. at 548 (O'Connor, J., concurring) ("I do not, however, understand the Court's opinion to suggest that, having found admiralty jurisdiction over a particular claim against a particular party, a court must then exercise admiralty jurisdiction over all the claims and parties involved in the case. Rather, the court should engage in the usual supplemental jurisdiction and impleader inquiries."). Title 28, Section 1367 of the United States Code states, in pertinent part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
> . . .
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> > (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367. Assuming *arguendo* that the vessel-based and land-based claims form part of the same "case or controversy" under subsection (a), the Court declines to exercise supplemental jurisdiction over the land-based claims under subsection (c)(2). A fair reading of Claimants' state-court petition reveals that the bulk of their case concerns obtaining relief under state law from the noise, dust, and vibrations emanating from the onshore concrete crushing operation. The vessel-based claims, by contrast, are a federal tail on a state-law dog. Because the Court finds the state-law claims substantially predominate over the federal admiralty claims, the Court declines to exercise supplemental jurisdiction.

## C. More Definite Statement; Scope of the Injunction under the Limitation Act

As to Claimants' request for a more definite statement, the pleadings make clear that the Limitation Plaintiffs seek to restrain the prosecution of all claims asserted in the State Action against the Limitation Plaintiffs. Accordingly, the Court denies this motion and moves on to the related issue concerning the injunction under the Limitation Act.

At issue is the scope of this Court's injunction restraining proceedings against the Limitation Plaintiffs outside the Limitation Actions. Claimants assert that the stay should be lifted or, alternatively, modified such that it only enjoins claims related to vessel activity, but not the land-based claims. Limitation Plaintiffs contend that the Limitation Act requires the Court to stay all related claims against the ship owners, including claims arising from the land-based activity.

Enacted in 1851, the Limitation Act, 46 U.S.C. 30501, et seq.,[8] allows a vessel owner to limit liability for damage or injury occasioned without the owner's privity or knowledge to the value of the vessel, post-casualty or voyage, plus any pending freight. See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 446 (2001); 2 Thomas J. Schoenbaum, Admiralty & Maritime Law § 15-7, at 196 (5th ed. 2011). The central provision of the Act provides:

> (a) In General.—Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight. If the vessel has more than one owner, the proportionate share of the liability of any one owner shall not exceed that owner's proportionate interest in the vessel and pending freight.
>
> (b) Claims Subject to Limitation.—Unless otherwise excluded by law, claims, debts, and liabilities subject to limitation under subsection (a) are those arising from

---

[8] Prior to 2006, the Limitation Act was codified at 46 U.S.C. App. § 181, et seq.

any embezzlement, loss, or destruction of any property,
goods, or merchandise shipped or put on board the vessel,
any loss, damage, or injury by collision, or any act,
matter, or thing, loss, damage, or forfeiture, done,
occasioned, or incurred, without the privity or knowledge
of the owner.
. . . .

46 U.S.C. § 30505. In 1871, the Supreme Court created procedural

rules to govern limitation proceedings, which are now found in Rule

F of the Supplemental Rules for Admiralty or Maritime Claims.

<u>Lewis</u>, 531 U.S. at 447-48.

Under the Limitation Act and Supplemental Rule F, within six

months of receiving a written claim, a vessel owner may file a

complaint in federal court seeking exoneration from and limitation

of liability. <u>See</u> 46 U.S.C. § 30511(a); Fed. R. Civ. P. Supp.

F(1), (2). If the limitation plaintiff complies with certain

requirements, "all claims and proceedings against the owner or the

owner's property with respect to the matter in question shall

cease," and the court, upon application, "shall enjoin the further

prosecution of any action or proceeding against the plaintiff or

the plaintiff's property with respect to any claim subject to

limitation in the action." Fed. R. Civ. P. Supp. F(3); <u>see also</u> 46

U.S.C. § 30511(c) ("When an action has been brought under this

section and the owner has complied with subsection (b), all claims

and proceedings against the owner related to the matter in question

shall cease."). The court also issues a public notice admonishing

those having claims "with respect to which the complaint seeks

limitation" to file their claims in the federal limitation proceeding. Fed. R. Civ. P. Supp. F(4). In this manner a concursus is established wherein the district court, sitting without a jury, determines whether the vessel owner is liable, and, if so, whether the owner may limit liability. Lewis, 531 U.S. at 448. The court will also determine the validity of the claims, and if liability is limited, distribute the limitation fund among the claimants. Id.

The Limitation Act creates tension with the "saving to suitors" clause in the admiralty jurisdiction statute, 33 U.S.C. § 1333(1) (quoted in note 6, supra). See id. The clause "preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." Id. at 445 (citations omitted). Thus, while the saving to suitors clause permits a plaintiff to pursue some in personam maritime claims in state court, as Claimants sought to do in this matter, the Limitation Act gives vessel owners the right to seek limitation of liability in federal court. Id. at 445, 448.

This Court previously enjoined all claims—vessel-based and land-based—against the Limitation Plaintiffs in the State Action. Rec. Docs. 15, 35.[9] In support of their position that the scope of

---

[9] For example, the Order restraining claims against NASDI stated, in pertinent part:

IT IS FURTHER ORDERED that the commencement or further prosecution of any action or proceeding against the Complainant [NASDI], their sureties,

(continued...)

this injunction was proper, Limitation Plaintiffs rely heavily on
In re Shell Oil Co., 780 F. Supp. 1086 (E.D. La. 1991).

In In re Shell Oil, a jack-up barge positioned next to an
offshore well in East Bay Field used its crane to lift grating from
the well. During this process, the vessel's crane tore a valve
from the gas lift line, causing natural gas to escape. The gas
ignited, resulting in three injuries and three deaths to workers
aboard the vessel. Id. at 1087-88, 1090 n.17. Shell, which owned
the jack-up barge and was the owner/operator of the East Bay Field,
filed a limitation action. Claimants moved the court to modify its
injunction so as to allow the claims asserted against Shell in a
capacity **other** than vessel owner—i.e., as owner and operator of the
East Bay Field—to proceed in state court. Id. at 1090. The court
denied the motion, explaining:

> Under Supplemental Rule F(3) an owner, upon compliance
> with Supplemental Rule F(1), is generally entitled to an
> injunction enjoining the further prosecution of all
> claims against him or his property. There is no
> provision whatsoever regarding an "owner" who is subject
> to suit in yet another capacity. The case law is simply
> devoid of any support for the "dual capacity" exception
> pertaining to Section 183 [now codified at 46 U.S.C. §
> 30505(a)] "owners" as theorized by moving claimants
> herein.

---

[9] (...continued)
their underwriters and insurers, or any of their property with respect to
any claims for which Complainant seeks limitation of liability herein,
including any claim arising out of or incident to or connected with any
loss, damage, injury, death or destruction, resulting from the events
beginning in May 2011 and continuing to this day, as more fully described
in the First Amended Complaint, be and the same is hereby stayed and
restrained until the hearing and determination of this proceeding.

Rec. Doc. 35 at 3.

<u>Id.</u> at 1091.  The court also supported its conclusion by citing cases that held the concursus to be a fundamental purpose of the Limitation Act.  <u>Id.</u> at 1091 (citing <u>Md. Cas. Co. v. Cushing</u>, 347 U.S. 409, 415 (1954); <u>Hartford Accident & Indemn. Co. v. S. Pac. Co.</u>, 273 U.S. 207, 216 (1927); <u>Metro. Redwood Lumber Co. v. Doe</u>, 223 U.S. 365, 371 (1912); <u>The Quarrington Court</u>, 102 F.2d 916, 918 (2d Cir. 1939)).

Admittedly, the Court has found no case that more closely resembles the instant situation than <u>In re Shell Oil</u>.  The Court previously relied on this case to support the scope of the injunction.  Tr. of Mar. 16, 2012 Hr'g, Rec. Doc. 84 at 32-33. After further study, however, <u>In re Shell Oil</u> is distinguishable from this matter.  The claims asserted in <u>In re Shell Oil</u> arose from, or were intertwined with, the actions of the vessel.[10]  By contrast, here there are two distinct claims.  As discussed above, the land-based claims relate to vessel activity occurring on

---

[10]   The <u>In re Shell Oil</u> court explained:

[C]laimants have carefully worded certain claims so as to avoid allegations that Shell's liability flows from its "ownership" or "control" of the [vessel].  Nevertheless, analysis of their claims [Footnote 17] leads to the inescapable conclusion that, in the event that claimants are successful in holding any of the Shell entities accountable, it may well be as "owner" of the vessel as that term has been explained above and construed in the past.

[In footnote 17:] Plaintiff[s] in limitation aptly argue, as follows: The primary focus of the activity resulting in the event of this limitation is the crane operation aboard the vessel. The well jacket in question is a small **unmanned** well jacket. The six men aboard the vessel included, Bill Taylor, of the EBII and a five man maintenance crew.

<u>Id.</u> at 1090 & n.17 (emphasis in original; footnote 16 omitted).

25

navigable water only in that vessels were used to deliver concrete to the staging area. But delivery of the concrete, standing alone, did not create the noise, dust, and vibrations that allegedly emanate from the staging area. It required the separate, onshore act of crushing the concrete to give rise to the land-based claims. The relationship between the land-based claims and vessel activity is far too tenuous and incidental. Given this distinction, the Court is not persuaded it should reach the same conclusion as In re Shell Oil.

As to the cases cited in In re Shell Oil, it is true that the Supreme Court has at times referred to concursus as the "heart" of the Limitation Act. See Hartford Accident, 273 U.S. at 215-217; Cushing, 347 U.S. at 415 (plurality opinion) ("The heart of this system is a concursus of all claims to ensure the prompt and economical disposition of controversies in which there are often a multitude of claimants."). However, later decisions make clear that concursus is not required where it does not serve the purposes of the Limitation Act. See, e.g., Lake Tankers Corp. v. Henn, 354 U.S. 147, 152-53, 154 (1957) ("The Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over and above that granting him limited liability. . . . The language in [Cushing] . . . refers to those cases where the claims exceed the value of the vessel and the pending freight. In that event, as we have pointed

out, the concursus is vital to the protection of the offending owner's statutory right of limitation. But this is not to say that where concursus is not necessary to the protection of this statutory right it is nonetheless required."); Grant Gilmore & Charles L. Black, Jr., The Law of Admiralty § 10-41, at 935 (2d. ed. 1975) ("It cannot be said, however, that the concourse theory is today in a flourishing state . . . . The lower courts have on the whole found that the Supreme Court's Langnes v. Green [282 U.S. 531 (1931)] theory—that plaintiffs, by virtue of the saving to suitors clause, should be allowed to choose the forum of litigation—overrides the shipowner's claim to the benefits of a 'concourse.'"). Notably, in 2001 the Supreme Court explained that the Limitation Act "do[es] not create a freestanding right to exoneration from liability in circumstances where limitation of liability is not at issue," and "the scope of exclusive federal jurisdiction **is proportional to the federal interest** in protecting the vessel owner's right to seek limitation of liability." Lewis, 531 U.S. at 453 (emphasis added).

Lewis's statement regarding the scope of exclusive federal jurisdiction is consistent with Supplemental Rule F(3), which states that the court "shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim **subject to limitation in the action**." Fed. R. Civ. P. Supp. F(3) (emphasis added); see also 46

27

U.S.C. § 30511(c) (quoted above). It follows, then, that if a claim is not subject to limitation, injunction is not mandatory. See W.E. Hedger Transp. Corp. v. Gallotta, 145 F.2d 870, 872 (2d Cir. 1944) ("The jurisdiction for limitation proceedings is that there is a fund to be distributed among several claimants, or, if there be but one claimant, that he disputes the right to limit or the amount. The jurisdiction of the admiralty court to adjudicate the merits of the claims is derivative from, and ancillary to, these considerations; it does not extend to a claim which is not subject to limitation.").[11]

Admittedly, 46 U.S.C. § 30505(b), quoted above, uses broad language to describe the claims that may be limited. However, as a general proposition and subject to several exceptions, the claims must arise out of the vessel's voyage in order to be limited. See 8 Edward V. Cattell, Jr., Benedict on Admiralty § 8.01 (2012) ("The Limitation of Liability Act permits a vessel owner . . . to file a complaint . . . and pray for the limitation of the vessel owner's liability . . . as to any liability which may attach **arising out of that voyage**." (emphasis added)). This was reflected when the

---

[11] See also Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583, 595-96 (2d Cir. 1961) (holding that, where the vessel owner successfully limited liability as to cargo claims, but failed to limit liability as to death and personal injury claims, the district court properly refused to enjoin the future prosecution of death and personal injury claims outside the limitation action); In re Magnolia Marine Transp. Co., 964 F.2d 1571 (5th Cir. 1992) (holding that, because the Limitation Act does not provide an insurer with a statutory right to limit liability in a federal forum, and the insurance contract did not require adjudication in the federal forum, the state court could not be enjoined from determining whether the contract entitled the insurer to limit liability).

28

Supreme Court described the purpose of and justification for the Limitation Act:

> The great object of the [Limitation Act] was to encourage ship-building and to induce capitalists to invest money in this branch of industry. . . . **[T]hose who have capital, and invest it in ships, incur a very large risk in exposing their property to the hazards of the sea, and to the management of seafaring men**, without making them liable for additional losses and damage to an indefinite amount. . . . The public interests require the investment of capital in ship-building . . . . And if there exist good reasons for exempting innocent ship-owners from liability, beyond the amount of their interest, for loss or damage to goods carried in their vessels, precisely the same reasons exist for exempting them to the same extent from personal liability in cases of collision. In the one case as in the other, their property is in the hands of agents whom they are obliged to employ.

Norwich & N.Y. Transp. Co. v. Wright, 80 U.S. (13 Wall) 104, 121-22 (1871) (emphasis added). Similarly, Supplemental Rule F(2) makes several references to the "voyage" on which the claims arose when it describes the requirements of the limitation complaint:

> [The limitation complaint] shall state **the voyage if any, on which the demands sought to be limited arose**, with the date and place of its termination; the amount of all demands including all unsatisfied liens or claims of lien, in contract or in tort or otherwise, **arising on that voyage**, so far as known to the plaintiff, . . . the value of the vessel at the close of the **voyage** or, in case of wreck, the value of her wreckage, strippings, or proceeds . . . .

Fed. R. Civ. P. Supp. F(2) (emphasis added); see also In re Magnolia Marine, 964 F.2d at 1575 ("Lake Tankers makes 'crystal clear' that the Act is directed at **maritime** misfortunes where the losses claimed exceed the value of the vessel and freight."

(emphasis added)); Gilmore & Black, supra, § 10-48, at 951 ("The Limitation Act was designed to give shipowners a limited immunity from the consequences of large scale disaster at sea . . . .").

As to the claims that the vessels trespassed over Claimants' property and/or eroded some of the Claimants' land, there can be little doubt that they fall within the scope of the Limitation Act: These claims arise out of the vessels' voyages. However, the land-based claims—the claims arising from the alleged noise, dust, and vibrations emanating from the concrete crushing operation—are outside the scope of the Limitation Act. The land-based claims do not arise out of the voyage of a vessel, nor do they relate in a significant way to vessel activity. These claims relate solely to actions occurring on land. The purpose of the Limitation Act as expressed by the Norwich Court has no relationship to an onshore concrete crushing operation.[12]

Because the land-based claims are not claims "subject to limitation," the Court is not required to enjoin the State Action as to these claims. See Fed. R. Civ. P. Supp. F(3); Lewis, 531 U.S. at 454 ("But where . . . the District Court satisfies itself

_____

[12] If admiralty jurisdiction must exist in order for the Court to entertain a limitation action, see Guillory v. Outboard Motor Corp., 956 F.2d 114, 115 (5th Cir. 1992) (per curiam), supra Part III(B), then it would follow that a non-maritime claim cannot be limited simply because it is joined with a maritime claim. Therefore, the Court's holding that there is no admiralty jurisdiction over the land-based claims would serve as an additional reason why this claim is not "subject to limitation" and thus outside the Limitation Act's mandatory injunction. However, because it is not entirely clear whether the proposition "the Limitation Act embraces maritime as well as non-maritime claims," see note 5, supra, is still good law, the Court does not rely on this reasoning.

that a vessel owner's right to seek limitation will be protected,

the decision to dissolve the injunction is well within the court's

discretion."). Although instances may arise when a federal court

should enjoin the prosecution of non-limitable claims,[13] the parties

have not raised such concerns here. Accordingly, the Court will

relax the injunction with respect to the land-based claims relating

to the noise, dust, and vibrations emanating from the concrete

crushing operation. The State Action may proceed with respect to

these claims.

However, the injunction will remain with respect to the

vessel-based claims—the claims of trespass, etc., asserted against

the tug boats and barges that transit the canal. Although it seems

unlikely, it is not clear at this time whether the vessel-based

claims would exceed the limitation funds. Accordingly, the Court

must protect Limitation Plaintiffs' right to limit liability in a

federal court. If, however, the appropriate stipulations are

entered with respect to these claims, the Court will consider

relaxing this portion of the stay as well. See, e.g., In re

Magnolia Marine, 964 F.2d at 1575-76.

Given the above, the Claimants' argument regarding the Anti-

Injunction Act, 28 U.S.C. § 2283, is largely moot. To the extent

it is not moot, the vessel-based claims, as explained, are subject

---

[13] For example, perhaps if the non-limitable claims threatened the limitation fund or the owner's benefit of insurance. See In re Magnolia Marine, 964 F.2d at 1579.

to the Limitation Act, which is an exception to the Anti-Injunction Act. _In re Wilson Marine Transporters_, No. 98-2938, 2001 WL 1012575, at *2 (E.D. La. Aug. 30, 2001). Therefore, the Court may enjoin proceedings with respect to these claims.

**D.    Privity and Knowledge**

The Court finds that Claimants' arguments regarding privity and knowledge, to the extent they are not mooted by the foregoing conclusions, are merit issues not appropriate for resolution at this time. Accordingly, Claimants' motion is denied with respect to privity and knowledge issues.

**E.    Tammany Holding Company, LLC's Motion for Preliminary Injunction**

Tammany Holding Company, LLC, the owner of the land used as the staging area, recently filed a motion for preliminary injunction. Rec. Doc. 95. Given the holdings above, particularly that there is no jurisdiction over the land-based claims and the injunction is relaxed with respect to same, this motion may be, or may soon become, moot. Counsel should promptly advise the Court as to whether this motion is moot.

## IV.    CONCLUSION

For the foregoing reasons, Claimants' Motions, Rec. Docs. 70, 73, 87, are **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)    There is admiralty jurisdiction over the vessel-based claims relating to the vessels transiting the canal (vessel trespass

claims, etc.).  There is no admiralty jurisdiction over the land-based claims relating to the noise, dust, and vibrations emanating from the concrete crushing operation at the staging area.  The Court further declines to exercise supplemental jurisdiction over the land-based claims.

(2)  Claimants' request for a more definite statement is denied.

(3)  The injunction will be relaxed with respect to the land-based claims.  A separate order will issue to this effect.  The injunction is maintained, for the time being, with respect to the vessel-based claims.  The Court will consider relaxing this aspect of the stay if the appropriate stipulations are entered.

(4)  Privity and knowledge are merit issues not appropriate for resolution at this time.

(5)  Counsel should promptly advise the Court as to whether the Motion for Preliminary Injunction, Rec. Doc. 95, is moot.

**SO ORDERED.**

New Orleans, Louisiana, this 8th day of June, 2012.

_____
United States District Judge