UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF: BERTUCCI CONTRACTING CO., L.L.C. | CIVIL ACTION<br><br>NO. 12-664 C/W 12-697 C/W 12-1783 C/W 12-1912 C/W 12-1914<br>REF: 12-1914<br><br>SECTION "J" (3) |

ORDER

On September 18, 2013, Coastal Logistics' Motion for Sanctions Against Claimants for Breach of Discovery Order [Doc. #219] and the Motion for Sanctions Against Claimants for Breach of Discovery Order [Doc. #223] came on for oral hearing before the undersigned. Present were Michael Stag and Ashley Liuzza on behalf of claimants, Randolph Waits, Jordan Teich, Etienne Balart, Jefferson Tillery, Alfred Rufty, Jill Willhoft, Sal Pusateri, and Rowen Fricker on behalf of various petitioners in limitation and Jose Cot and Shannon Kelly on behalf of the State cross-defendants. After the oral hearing, the Court took the motions under advisement. Having reviewed the motions, the opposition and the case law, the Court rules as follows.

**I.    Background**

The complaint alleges as follows. The original Interstate 10 Twin Span Bridges ("Twin

Spans") crossed Lake Pontchartrain and connected the lake's southern and northern shores. In 2005, Hurricane Katrina made landfall in southeast Louisiana and severely damaged the Twin Spans. The Louisiana Department of Transportation and Development was initially tasked with repairing the Twin Spans.  Because of the extensive damage caused by Hurricane Katrina, the State of Louisiana ultimately decided that the Twin Spans were too vulnerable to storm surges and decided to replace them with two new bridges. Work on the replacement bridges began on July 13, 2006. The first bridge opened on July 9, 2009, and the second on April 7, 2010. The Twin Spans were then permanently closed to traffic.

     The State of Louisiana contracted with various companies to effectuate the demolition and removal of the Twin Spans and the re-purposing of the associated concrete. This process began in May 2011 and was expected to generate in excess of 244,000 tons of concrete from the Twin Spans. As part of the Twin Spans' demolition and removal, barges and tugboats transported slabs of concrete to a "staging area" just north of Lake Pontchartrain. The staging area was located on an undeveloped piece of property accessible from the lake via a canal. Vessels carried concrete through the canal. On their way they passed the Lakeshore Estates Subdivision and other residential areas ("Lakeshore Estates"), which were adjacent to the staging area. In so doing, the vessels allegedly trespassed on part of the canal purportedly owned by residents of Lakeshore Estates. The currents from those vessels also allegedly eroded and caused damage to boathouses and bulkheads owned by residents of Lakeshore Estates.

     According to testimony adduced in state court and in depositions filed as a part of a motion for reconsideration, once the concrete arrived at the staging area, the tugboats rammed the barges onto shore and kept them there by revving their engines anywhere from 30 minutes to several hours.

While tugboats held the barges in place, large slabs of concrete were unloaded to shore. This process entailed dragging the concrete off the metal barges or picking up the concrete by crane and dropping it back on the barges to break it into smaller pieces. After the concrete was unloaded, industrial crushers and grinders broke it down or crushed it into smaller parts and sorted it by size. This again involved picking up slabs of concrete and repeatedly smashing them until they were reduced to the desired size. Once empty, the barges would be cleaned. This involved pushing any remaining debris from the barges into the water. This debris also allegedly entered part of Lakeshore Estates.

After being transported from the Twin Spans, unloaded and crushed down, some of the concrete was packed into geo-textile "mattresses." These mattresses initially were stored at the staging area but later were loaded back onto the barges and transported to Lake Borgne to be used for shoreline protection. Other concrete from the staging area was used in the creation of an artificial reef and the construction of a fishing pier.

Aside from allegedly being very loud, the entire process purportedly also created dust at the point at which the concrete was unloaded and when the concrete was crushed, which then settled on Lakeshore Estates. The activities at the staging area also allegedly created vibrations that disturbed and damaged Lakeshore Estates.

The State contracted with Petitioners-Appellants NASDI, L.L.C. ("NASDI") and Bertucci Contracting Co., L.L.C. ("Bertucci") (collectively, "Shipowners") to help complete the process of demolishing and removing the Twin Spans and repurposing the concrete remains. The Louisiana Department of Transportation and Development contracted with NASDI to demolish and remove parts of the Twin Spans and transport them to the staging area. Bertucci entered a contract with the Louisiana Office of Coastal Protection and Restoration to break up the concrete, place it into

mattresses, and transport the mattresses to Lake Borgne. Bertucci also regularly transported light and heavy equipment to the staging area by boat and barge. NASDI sub-contracted with Bertucci to assist in breaking down the concrete at the staging area.

Claimants are residents of Lakeshore Estates. On January 17, 2012, they filed a Petition for Declaratory Judgment, Injunctive Relief, and Class Action Lawsuit Related to Liability and Damages in the Civil District Court for the Parish of Orleans. Their petition asserted that the Shipowners' activities created noise, dust, and vibrations that resulted in personal injury, property damage, and nuisance to nearby residential areas. They further alleged that the Shipowners' vessels trespassed into private waterways near the staging area that caused further damage.

On March 9, 2012, Bertucci filed a limitation of liability action in this Court pursuant to the Limitation of Liability Act ("Limitation Act"), 46 U.S.C. §§ 30501 *et seq.* NASDI also filed an action for limitation of liability in this Court on March 14, 2012. The District Court enjoined claimants from prosecuting their state-court action and consolidated the two limitation actions.

On March 18, 2012, claimants filed an Emergency Motion to Limit Stay, Lift Stay, and/or Set Preliminary Injunction Hearing. They sought to modify or limit the District Court's stay to obtain pending injunctive relief in state court. The District Court held a status conference on March 19, 2012 and denied claimants' motion without prejudice to their right to bring their motion again at a later date.

On March 26, 2012, claimants moved to dismiss the Shipowners' limitation actions for lack of subject matter jurisdiction and/or to lift the stay. The District Court granted their motions in part and denied them in part. The District Court first construed the state-court petition to include separate "land-based" and "vessel-based" claims. It then ruled that admiralty jurisdiction did not attach to

what it termed the land-based claims, "i.e., the noise, dust, and vibrations allegedly emanating from the concrete breaking operation at the staging area." The Court also (1) declined to exercise supplemental jurisdiction over what it deemed the land-based claims; and (2) held that admiralty jurisdiction attached to the vessel-based claims for trespass by barges and tugboats traveling on claimants' side of the canal.  In a separate order, the Court lifted the injunction as to the land-based claims.  NASDI filed a motion for reconsideration, which the District Court summarily denied. Shipowners timely filed an interlocutory appeal of the District Court's dismissal of their nuisance-related limitation actions for lack of subject matter jurisdiction, and the Court's lifting of its stay as to those claims. The Fifth Circuit vacated the District Court's order and remanded the lawsuit to this Court for further proceedings.

**II.    The Parties' Contentions**

    **A.    Coastal Logistics' Motion for Sanctions Against Claimants for Breach of Discovery Order**

Coastal Logistics, L.L.C. ("Coastal") argues that claimants' responses to their interrogatories and requests for production were deficient.  After the Court ordered claimants to provide full responses to the discovery requests, claimants provided supplemental responses.  Coastal contends that the supplemental responses are also deficient.  Coastal notes that the District Court has already sanctioned claimants for failure to meet deadlines (*i.e.*, for not having provided a settlement demand by a certain date).  Coastal contends that claimants simply refer them to other responses, to state-court pleadings or transcripts, to expert reports or file material, to entire deposition transcripts and to other vast storehouses of data.  Coastal maintains that it is improper to refer to whole depositions or to other large volumes of testimony.  Coastal delineates the deficiencies as follows:

    Int. No. 2:    This interrogatory ("Int.") asks each claimant to itemize and describe in detail

5

|   |   |
|---|---|
|   | his property damage. Coastal notes that although the 343 claimants seek $41 million in damages, only 31 claimants provided details as to property damage. For 90 of the claimants, there is no response at all. For all of the others, there is only a common mantra. Claimants repeat the mantra again and again over 42 pages to create the illusion of substance. It stands as the response for 206 claimants. Coastal notes that nine of the claimants list addresses in New Orleans and one in Arabi – across the Lake from the worksite. Coastal also argues that claimants can not point them to the expert reports because such reports do not contain information about specific property damage. |
| Int. No. 3: | This request seeks the name of the vessel that caused the damage, the nature and extent of the damage, the date on which the damage occurred, how the Limitations petitioners' activities contributed to the damage and the estimated or actual repair cost. Claimants referred Coastal to various sources where responsive information may be found. |
| Int. No. 4: | This asks when each claimant observed vessels belonging to the Limitation Petitioners in the waterway adjacent to the staging area. Claimants referred Coastal to "videos, photographs, complaints, communications, logs and other means." |
| Int. No. 5: | This request asks each claimant to identify when he was annoyed by vessel noise and, if possible, to identify the vessel. Claimants responded that they have documented some instances. |
| Int. No. 12: | This asks claimants to identify all losses sustained to person or property and the amount of said loss. Only 37 claimants responded. For more than 300 of them, they responded with one boilerplate sentence and referred Coastal to vast repositories of documents (over 10,000 pages). And only six of the 37 who responded quantified their damages. |
| RFP No. 3: | This request for production ("RFP") seeks all evidence that demonstrates that Coastal's vessels violated any rules or regulations, trespassed on claimants' property or caused them damages. Claimants referred Coastal to 641 computer files and 37 video files. There are over 16,000 photographs in a small percentage of the computer files. Based on a sampling, over 90 per cent of the photographs show no vessel. |
| RFP No. 4: | This request seeks documents that evidence property damage caused by the activities of the Limitation Petitioners. Claimants referred Coastal to a huge amount of documents. The documents number in the tens of thousands, and the expert reports include 7,450 Bates-numbered pages plus a reference to a 20GB hard drive. |
| RFP No. 5: | This seeks documents relating to the monitoring of noise from the Limitations Petitioners' Vessels. Claimants referred Coastal to the entire files of four of their experts. While two of the experts monitored sound, claimants point only to their entire files. |
| RFP No. 8: | This request seeks all communications between claimants and any person related to the Limitations Petitioner's operations at or near the staging area. |

                                Claimants objected. Coastal contends that claimants waived all objections by failing to timely respond to the requests.

**RFP No. 9:**    This RFP seeks documents relating to the Limitation Petitioners' operations at or near the staging area. Claimants referred Coastal to 356 computer files and 37 video files. Coastal notes that only 708 of the 9,165 photographs in one document are responsive.

**RFP No. 10:**    This seeks documents relating to each instance when noise from one of the Limitation Petitioner's vessels caused a claimant physical discomfort or annoyance. Claimants identified no documents and pointed only to other responses.

Coastal notes that the Court ordered claimants to provide full responses to the requests, and claimants failed to do so. Coastal asks the Court to (1) dismiss the claims of those claimants who failed to respond; (2) strike the original and supplemental responses as flawed; (3) order claimants to provide complete responses within seven days as to each claimant; (4) order that claimants are precluded from using at trial any information that they fail to produce; and (5) award it its fees and costs incurred in connection with the motion.

        **B.**    **Motion for Sanctions Against Claimants for Breach of Discovery Order**

Anselmi Marine, L.L.C., REC Marine Logistics, L.L.C. and Triple C Towing, L.L.C. adopt Coastal's motion in full.

        **C.**    **Claimants' Opposition**

Claimants note that they contend that all of the Limitation Petitioners are liable to them jointly and/or solidarily. Thus, they maintain, many of the discovery responses will overlap and support a theory of joint liability.

Claimants argue that 88 claimants did not fail to respond. The Limitation Petitioners propounded the requests on only 260 individuals, and Coastal did not mention the 88 claimants in its first motion to compel. Claimants maintain that Coastal misrepresented this to the Court and merits sanctions for such lack of candor. Claimants contend that levying sanctions against claimants

to whom discovery was never sent would be an egregious error.

With respect to Int. Nos. 1 and 2 and RFP No. 4, claimants contend that they fully responded to the requests by identifying that they allege diminution of property value and the need for remediation of their property. They maintain that they produced the support for these damages.

With respect to Int. No. 3, claimants contend the Coastal's previous motion to compel objected only to the identification of the state-court pleadings and expert reports so they limited their supplemental responses to these issues. Claimants contend that Coastal's objection at this late stage of the litigation prejudices them because it failed to point out the other flaws in the previously-filed motion.

With respect to their responses to Int. Nos. 4 and 6, claimants admitted that there have been entirely too many instances of vessel activity to document each occurrence. Claimants maintain, however, that they have produced the videos, photos and logs from which exact dates and times can be derived. Citing the business records rule, claimants contend that they properly pointed to the vast amount of documents because the burden of deriving or ascertaining the answer will be substantially the same for either party.

With respect to RFP No. 8, claimants argue that they asserted their objections in their original responses. They maintain that the request is overbroad and vague in that Coastal failed to define "communication." Claimants believe, however, that they have provided all documents responsive to the request. Claimants also contend that they did not waive their objection as to the attorney-client privilege.

Lastly, claimants assert that discovery is in the initial stages, and no defendant can demonstrate privilege at this time.

### D. Coastal Logistics' Reply

Coastal now agrees with claimants that it propounded discovery on only 260 claimants. Coastal maintains that claimants have failed to rebut its arguments laid out in its motion for sanctions. Coastal argues that claimants can not rest on the fact that discovery is far from complete. It contends that it seeks only those documents already in claimants' possession, and claimants should thus not need discovery to uncover such information and documents.

### III. Law and Analysis

For the following reasons, the Court grants the motions in part. The Court first recognizes that no defendant can demonstrate prejudice at this early stage of the litigation. Discovery is in its initial stages, and there is no discovery deadline yet. There is time to resolve these and any future discovery dispute and to conduct any necessary discovery.

With regard to dismissing the claims of those claimants who failed to respond, this issue is now moot given Coastal's acknowledgment that it propounded discovery on only 260 claimants. And the Court will not strike the original and supplemental responses at this time but will order their supplementation as outlined below.

The Court finds that claimants can not merely point to other vast repositories of documents, deposition transcripts, state-court pleadings, etc. and inform defendants to search the documents for the information that they want. *See Republic Envtl. Sys., Inc. v. Reichold Chems., Inc.*, 157 F.R.D. 351, 353 (E.D. Pa. 1994); *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 686 (D. Han 1991); *see also Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 640 (D. Kan. 1999) ("Under the guise of Fed. R. Civ. P. 33(d) defendants may not simply refer generically to past or future production of documents. They must identify in their answers to the interrogatories

9

specifically which documents contain the answer. Otherwise they must completely answer the interrogatories without referring to the documents." (citations and quotations omitted). This is the crux of the dispute here. If claimants seek to produce business records in this fashion, they may do so under the federal rules. Fed. R. Civ. P. 34(b)(2)(E). But the majority of the documents to which they refer defendants are not business records and have been created with regard to this litigation. Under the case law, then, claimants may not merely point defendants to previously-produced documents or pleadings, etc. to satisfy their obligations under the federal rules.

However, on the flip side of the coin, and as noted above, the Court recognizes that this is a large amount of documents requested from approximately 260 individuals. For example, in response to Int. No. 1, counsel listed each claimant with his place of residence. What defendants really seek is an itemized list of damages that corresponds to that list. This is not impossible to do, but it will take time. Claimants must respond to the interrogatories and requests for production with regard to each individual claimant, if such information exists at this time and provide defendants with Bates-numbered documents that support such a claim. This, they must do with respect to the disputed discovery requests listed above. If claimants contend that they have produced all in their possession at this time, they need simply and formally state so. Claimants may always supplement their responses under the federal rules as more discovery is had.[1]

**IV. Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Coastal Logistics' Motion for Sanctions Against Claimants for

---

[1] For this reason, the Court will not recommend at this time that claimants are precluded from using at trial any information that they fail to produce. Claimants are allowed to supplement their responses under the federal rules until the passing of the discovery deadline (which does not yet exist in this lawsuit).

Breach of Discovery Order [Doc. #219] and the Motion for Sanctions Against Claimants for Breach of Discovery Order [Doc. #223] are GRANTED IN PART as outlined above. Claimants shall supplement their responses to the discovery requests **no later than fourteen (14) days from the date of this Order**. This Order reserves the right to Coastal to file the appropriate motion with supporting documents to recover its fees and costs incurred in connections with the motion, should circumstances so warrant.

New Orleans, Louisiana, this 5th day of November, 2013.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**